IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROBERT E. DORTCH,                      )
                                       )
                    Plaintiff,         )
                                       )
vs.                                    )     Case No. 11-cv-0841-MJR-SCW
                                       )
RANDY DAVIS,                           )
CHRISTINE BROWN,                       )
DENNIS LARSON, M.D., and               )
JOHN R. SHEPHERD, M.D.,                )
                                       )
                    Defendants.        )

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.    **Introduction and Procedural Overview**

Robert Dortch filed suit in this Court under 42 U.S.C. 1983, alleging violations of his federally secured constitutional rights while incarcerated at Pinckneyville Correctional Center (PCC).  The complaint named four Defendants: Randy Davis, Warden of PCC; Chris Brown, the Healthcare Administrator of PCC; and two physicians who saw Dortch at PCC, listed on the complaint as Dr. Larson and Dr. Sheppard.[1]  In an August 2012 Order (Doc. 12), the undersigned concluded that the complaint survived threshold review under 28 U.S.C. 1915A as to Dortch's claim for deliberate indifference to serious medical needs, as to all four Defendants.

---

[1]    Later pleadings clarified that these Defendants' full and correctly spelled names are Dennis Larson, M.D., John R. Shepherd, M.D., and Christine Brown.  *See, e.g.,* Answers at Doc. 29, Doc. 33, and Doc. 40. **The Clerk's Office shall correct the docket sheet accordingly.**

Now before the Court are two summary judgment motions.  Plaintiff filed briefs opposing both motions. The first motion, filed October 9, 2013 by Defendants Larson and Shepherd, ripened with a reply brief on November 7, 2013.  The second motion, filed November 14, 2013 by Defendants Brown and Davis, ripened with a reply brief on January 27, 2014.[2]  For the reasons stated below, the Court grants both summary judgment motions.

### B.   <u>Applicable Legal Standards</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012),** *citing* **FED. R. CIV. P. 56(a).** A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).**

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case," evidence on which a reasonable jury could rely.  *Porter v. City of Chicago,* **700 F.3d 944, 956 (7th Cir. 2012),** *citing Goodman v National Sec. Agency, Inc.,* **621 F.3d 651, 654 (7th Cir. 2010).**

---

[2]    Plaintiff filed sur-replies to both summary judgment motions. Because the Local Rules of this District Court prohibit sur-replies, the Court has not considered those briefs.  *See* **SDIL-LR 7.1(g).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *Anderson*, **699 F.3d at 994;** *Righi v. SMC Corp.*, **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011).**   But the district court may not resolve issues of credibility when deciding a summary judgment motion.   "Those are issues for a jury at trial, not a court on summary judgment."   *Williams v. City of Chicago*, **733 F.3d 749, 752 (7th Cir. 2013).**

### C.   <u>Summary of Evidence</u>

Robert Dortch (Plaintiff) claims that Defendants were deliberately indifferent to his medical needs by failing to adequately treat his sleep apnea.  Specifically, Plaintiff alleges that Defendants denied him the use of a machine used to treat sleep apnea (a "CPAP" machine) for approximately three months, and as a result, he suffered pain, sleep deprivation, difficulty breathing, and emotional distress.   The Court now summarizes the evidence (including depositions, affidavits, medical records, and other documents), viewing the facts and reasonable inferences in the light most favorable to Plaintiff.

Plaintiff was diagnosed with severe sleep apnea in 2002, after experiencing problems with gasping for air in the middle of the night, chest pains, headaches, loud snoring, and fatigue throughout the day.  (Plaintiff's Deposition ("Dep."), p. 15).  The doctor who performed the sleep study informed him that while sleeping, Plaintiff would continually stop breathing throughout the night and that he was at risk to die in his sleep without treatment.  (Pl.'s Dep. p. 14).

Plaintiff arrived at PCC in August of 2010.  (Pl.'s Dep. p. 8). He went through medical intake screening at PCC on August 20, 2010.  (Pl.'s Dep. p. 24).  He testified that he told everyone he spoke to about his diabetes and sleep apnea, but he cannot recall specifically who he told.  (Pl.'s Dep. p. 24).  Approximately one week after arriving, Plaintiff told Christine Brown, Administrator of PCC's Health Care Unit, that he would have his CPAP machine sent from his house to PCC, but she informed him that would not be possible due to security concerns.  (Pl.'s Dep. pp. 25, 51-52; *see also* Brown Affidavit, Doc. 79-1, pp. 7-8).  Security must approve all medical equipment sent to the facility from an outside source.  (Davis Affidavit, Doc. 79-1, ¶  5).  Brown directed Plaintiff to seek approval from the medical staff.  (Pl.'s Dep. p. 53).  Plaintiff's medical records document his report of sleep apnea on that date.  (Doc. 66-4, p. 1).   Plaintiff did not see a doctor on September 1, 2010, he saw only a nurse that day.  (Pl.'s Dep. p. 30).

Plaintiff saw the Defendant doctors -- Dr. Larson and Dr. Shepherd -- one time each.  (Pl.'s Dep. p. 25).  Dr. Larson is an employee of Wexford Health Sources, Inc. (Wexford) and served as Regional Medical Director for the region encompassing PCC from July 18, 2006 through September 4, 2011 (Doc. 66, p. 2).  Dr. Shepherd worked for Wexford as an onsite independent contractor between 2001 and March 8, 2013 (*id.*).

Plaintiff saw Dr. Larson once – on September 12, 2010.  (Pl.'s Dep. p. 25; Larson Aff. ¶ 9).  Larson asked Plaintiff about his medical care prior to PCC, and Plaintiff gave him the names of Dr. Bonapart and Nurse McMills.  (Pl.'s Dep. p. 25, p. 30).  Plaintiff signed a medical consent form so that Larson could get Plaintiff's medical records from Cook County Jail.  (Pl.'s Dep. pp. 25-26; Doc. 66-4, p. 13).  Dr. Larson ordered Plaintiff's

medical records from Cook County pertaining to his sleep apnea treatment that same day -- September 12, 2010.  (Pl.'s Dep. p. 2; Larson Affidavit, Doc. 66-1, ¶ 8).

On September 21, 2010, the PCC medical unit received a phone call from Monica Smith regarding the Cook County Jail records request.  (Doc. 66-4, p. 3).  Smith said the records were at Stroger Hospital.  (Doc. 66-4, p. 3).  On October 1, 2010, a representative of Stroger Hospital called and informed PCC staff that Stroger did not have the sleep study.  (Doc. 66-4, p. 3).  Wexford approved Larson's request to perform a new sleep study on Plaintiff on October 8, 2010, due to the inability to obtain the records from other sources.  (Doc. 66-4, p. 10; Larson Aff. ¶ 13).  Larson did not tell Plaintiff what steps he was taking during this time.  (Pl.'s Dep. p. 26).

Plaintiff saw Shepherd once -- on September 14, 2010.  Shepherd told Plaintiff he was only there to treat Plaintiff's diabetes.  (Pl.'s Dep. pp. 28, 34; Shepherd Aff. ¶ 10).

Plaintiff was not informed that the doctors requested another sleep study for him.  (Pl.'s Dep. p. 37).  He testified that he would have never initiated the grievance process and would have gladly welcomed another sleep study.  (Pl.'s Dep. p. 37).  Plaintiff became concerned after several weeks and began to attempt to follow-up himself on getting his medical records by getting another consent form and sending it to his wife to send to his previous institution.  (Pl.'s Dep. p. 64)  Plaintiff submitted a request to staff inquiring about the status of his records on November 4, 2010.  (Doc. 90, p. 5).

Plaintiff received his CPAP machine at PCC from his family in November 2010.  According to Plaintiff, Warden Davis approved this around November 4, 2010, and

Plaintiff received the CPAP on November 19, 2010 (Pl.'s Dep. p. 38, p. 56).  Medical records reflect that Plaintiff was given his CPAP machine on November 18, 2010.  (Doc. 66-4, p. 5).  The CPAP machine, which came from Plaintiff's wife, had a broken hose.  It was temporarily repaired with tape, and an equipment request form was sent to Wexford for approval.  (Doc. 66-4, p. 5).  Plaintiff was informed that his machine was broken, but that the prison would order new parts.  (Pl.'s Dep. p. 39).

Plaintiff was issued a lower bunk permit to enable him to use his machine.  (Pl.'s Dep. p. 40).  He requested distilled water for use in his machine in November of 2010, but Brown told him he would have to use tap water.  (Pl.'s Dep. p. 61).[3]  Plaintiff received a new mask for the CPAP machine on December 21, 2010.  (Pl.'s Dep. p. 42; Doc. 66-4, p. 6).  Upon receiving his mask the prison staff told Plaintiff to let them know if he had any problems.  (Pl.'s Dep. p. 42).

Plaintiff received new water and a new water chamber for his machine on December 30, 2010.  (Pl.'s Dep. p. 42; Doc. 66-4, p.7).  Plaintiff asked for a larger strap for his machine on May 2, 2011, which he received later.  (Pl.'s Dep. p. 43).  Plaintiff was approved for a new mask on May 22, 2011 and again on June 29, 2012.  (Pl.'s Dep. pp. 43-45; Doc. 66-4, p. 9).  Plaintiff has not been deprived of his CPAP machine since receiving it on November 19, 2010.  (Pl.'s Dep. p. 46).

---

[3]     Plaintiff testified that he did not suffer any harm from not using distilled water.  (Pl.'s Dep. p. 61).  Nurse Rector agreed to provide distilled water to Plaintiff for use in his machine in May 2011.  (Pl.'s Dep. p. 61).

Defendant Davis served as the Warden of PCC during the relevant time period. (Davis Aff. ¶ 1).  He is not a medical treatment provider; he relies on the expertise of the medical staff on medical issues.  (Davis Aff. ¶ 3).

Plaintiff saw Davis walking the galleries and spoke to Davis about his sleep apnea problem sometime during the first week of September 2010.  (Pl.'s Dep. p. 49).[4] Davis referred Plaintiff to the medical department.  Davis told Plaintiff his family could not just send in a CPAP machine due to security concerns.  (Pl.'s Dep. p. 50).  Davis determined that two grievances submitted by Plaintiff about his sleep apnea were emergencies, but concurred in the grievance officer's report which found that medical staff was appropriately addressing the problem.  (Davis Aff. ¶¶ 6-7).

Lester T. Bricker, Plaintiff's cellmate, witnessed Plaintiff waking up gasping for air in the night on October 10, 2010 and October 19, 2010.  (Exhibit A to Plaintiff's Memo. Opposing Summary Judgment, Doc. 90, at p. 4).  On these two occasions, Bricker pushed the emergency call button but got no response from the guards.  (Doc. 90, p. 4).

**D.**    **Analysis**

"Courts interpret the Eighth Amendment, as incorporated through the Fourteenth Amendment, to impose a duty on state 'to provide adequate medical care to incarcerated individuals.'"  *McGee v. Adams*, **721 F.3d 474, 480 (7th Cir. 2013),** *quoting Johnson v. Doughty,* **433 F.3d 1001, 1010 (7th Cir. 2006).**  *See also Roe v. Elyea,* **631 F.3d 843, 856-58 (7th Cir. 2011).**  Officials violate this duty if they are deliberately indifferent

---

[4]    Plaintiff later stated (in his affidavit opposing summary judgment) that he saw Warden Davis on October 20, 2010.  (Doc. 90, p.2).

to the serious medical needs of a prisoner.  *Id.*  A "successful deliberate indifference claim is comprised of both an objective and a subjective element." ***Roe,* 631 F.3d at 857, citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  *Accord Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008) ("The deliberate indifference test ... has both objective and subjective prongs....").**

To prevail on a deliberate indifference claim, the plaintiff must show (objectively) that the deprivation he suffered was sufficiently serious and (subjectively) that the defendants acted with a sufficiently culpable state of mind to support liability. *See Greeno v. Daley,* **414 F.3d 645, 653 (7th Cir. 2005).**  Similarly, to defeat summary judgment in a deliberate indifference case, the plaintiff must satisfy both an objective and a subjective element.  ***King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012).**

As to the objective element of the deliberate indifference test, the plaintiff must offer evidence of an objectively serious medical need, i.e., something that "has been diagnosed by a physician as mandating treatment" or is so obvious that a lay person would recognize the need for attention.  ***Id., citing Zentmyer v. Kendall County, Illinois,* 220 F.3d 805, 810 (7th Cir. 2000).**

As to the subjective element, the plaintiff must "demonstrate a genuine issue of fact on the question whether [defendants] were aware of this serious medical need and were deliberately indifferent to it." ***Id., citing Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001).**  "Negligence – even gross negligence – is insufficient to meet this standard, but the plaintiff is not required to show intentional harm.... The standard is comparable to that required for criminal recklessness." ***King,* 680 F.3d at 1018.  *Accord***

8

*McGee,* **721 F.3d at 840 (to show deliberate indifference, a plaintiff must meet "essentially a criminal recklessness standard.…  Even gross negligence is insufficient to impose constitutional liability").**

Deliberate indifference claims are examined differently depending on whether the defendants are medical professionals or lay persons.  *McGee,* **721 F.3d at 481.** Medical professionals are entitled to deference in their treatment decisions, "unless no minimally competent professional would have so responded" under the circumstances. *Id.*

A medical professional may be held to have displayed deliberate indifference only if his decision is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that he did not base the decision on such a judgment.  *Id.  See also Duckworth v. Ahmad,* **532 F.3d 675, 679 (7th Cir. 2008) (deliberate indifference is not medical malpractice; "the Eighth Amendment does not codify common law torts").**  Bearing these principles in mind, the undersigned turns to the record before him as to each Defendant's treatment of Plaintiff.

- ■ **Serious Medical Need (Objective Element)**

The medical Defendants (Larson and Shepherd) first assert that the chest pain Plaintiff allegedly suffered while waiting for a CPAP machine was not a serious medical need.  Defendants draw the scope of the inquiry too narrowly by attempting to study one symptom of Plaintiff's condition in isolation.  The question is whether sleep apnea itself presents a serious medical condition.

A medical need is "serious" if it has been diagnosed and treated by a physician, or is so obvious that a layperson would recognize the condition as requiring treatment. *Thomas v. Walton*, **461 F.Supp.2d 786, 793 (S.D. Ill. 2006),** *citing Gutierrez v. Peters*, **111 F.3d 1364, 1373 (7th Cir. 1997).** *See also Meloy v. Schuetzle*, **230 F.3d 1363 (8th Cir. 2000)(finding obstructive sleep apnea is a serious medical condition).**   Sleep apnea is a condition where breathing may become disrupted during sleep. *Sleep apnea*, **WebMD,**   http://www.webmd.com/sleep-disorders/sleep-apnea/sleep-apnea   **(last visited March 5, 2014)**. Long term effects can include high blood pressure, stroke, heart failure, diabetes, depression, and ADHD.  *Id.*

Plaintiff testified that he was diagnosed with sleep apnea in 2002 by a doctor after experiencing problems with gasping for air at night, chest pains, headaches, loud snoring, and fatigue throughout the day.  Plaintiff testified that without his CPAP machine, he experienced episodes where he stopped breathing while asleep; he also submitted his cell mate's corroborating testimony on this point.  Plaintiff testified that he experienced chest pains and other symptoms.  Plaintiff has shown that he suffers from a serious medical condition.  *See Jackson v. Pollion,* **733 F.3d 786, 789 (7th Cir. 2013)**.  Which brings the Court to the second prong of the inquiry – whether Defendants were deliberately indifferent to this condition.

■      <u>**Deliberate Indifference (Subjective Element)**</u>

■■      M<small>EDICAL</small> D<small>EFENDANTS</small> – L<small>ARSON AND</small> S<small>HEPHERD</small>

A court will defer to the treatment decisions of medical professionals unless the decision is clearly outside the bounds of a minimally competent decision.  *Roe,* **631 F.3d**

**at 857**.   A medical professional will only be found liable for deliberate indifference if his decision "is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible did not actually base the decision on such a judgment." *Sain v. Wood*, **512 F.3d 886, 894-95 (7th Cir. 2008)**. And, clearly, medical malpractice is not deliberate indifference.  *Duckworth*, **532 F.3d at 679;** *McGee*, **721 F.3d at 481.**

Plaintiff's claims against Larson and Shepherd fail here.  Plaintiff's complaints of sleep apnea were not ignored by Larson or Shepherd.  Upon learning of Plaintiff's sleep apnea on September 12, 2010, Larson immediately took steps to treat it.  He instructed the health care center to request medical records to confirm Plaintiff's past treatment. The health care unit had Plaintiff sign a medical consent form two days later, which they then faxed to Cook County Jail.  When Cook County Jail indicated they thought Stroger Hospital had the records, PCC staff followed up with Stroger Hospital.  When it was discovered that Stroger did not have the records of Plaintiff's prior sleep study, Larson obtained approval from Wexford to perform another sleep study on Plaintiff. That study was only canceled when Plaintiff's family located his CPAP machine and sent it to the prison, where it was issued to Plaintiff.  Thereafter, health care staff took appropriate follow-up steps, like issuing the low bunk permit and supplying replacement parts for the CPAP.

Plaintiff alleges that he told other medical providers that he had sleep apnea prior to September 12, 2010, but there is no evidence that those unnamed people relayed that information to Larson or Shepherd prior to their respective visits.  There is also no

evidence that Larson or Shepherd knew of and deliberately disregarded Plaintiff's statement that he could have a CPAP machine sent from his house, just to delay or to purposely pursue a more time consuming method of getting Plaintiff treatment.  It is not unreasonable under the Eighth Amendment for physicians to attempt to confirm previous prescriptions with other medical treatment providers prior to continuing with that same course of treatment. *See, e.g., Williams v. Guzman*, **346 Fed. Appx. 102, 105 (7th Cir. 2009)**.  Any delay caused by the medical unit's attempt to confirm Plaintiff's previous treatment is not actionable.

Plaintiff argues that <u>Shepherd</u> is not entitled to summary judgment because Shepherd was rude to Plaintiff when he attempted to discuss his sleep apnea during an appointment regarding his diabetes on September 14, 2010.  Rudeness is not grounds for recovery under the deliberate indifference framework, and the evidence shows that the medical staff was working to confirm Plaintiff's diagnosis of sleep apnea at the time that he met with Shepherd about his diabetes.  Plaintiff is not entitled to have the medical unit staff member of his choice address a given health problem.

Plaintiff offers three reasons why <u>Larson</u> is not entitled to summary judgment: (a) Larson never communicated with him after the September 12, 2010 consultation; (b) Larson contacted the wrong people via the wrong method to get Plaintiff's medical records from Cook County Jail; and (c) Plaintiff was told that his family could not send in his CPAP machine, but PCC took a different position three months later.

The first argument is a complete nonstarter. The Seventh Circuit has never held that failure of medical staff to communicate with a patient is grounds for a deliberate

indifference claim.   Moreover, even though Plaintiff never met with Larson again, Plaintiff was able to obtain (from other sources) updates on the status of his records request.   And Plaintiff has not alleged that he sought to meet with Larson again and was denied.   He has not alleged that he put in further sick call slips that were ignored. Construing all reasonable inferences in Plaintiff's favor, it appears that Plaintiff and his wife attempted to follow up with Brown, but any deficiencies there cannot be attributed to Larson. Larson may have not met with Plaintiff again in person, but Plaintiff's medical records show that the medical staff continued to follow his instructions about Plaintiff's care after Larson examined Plaintiff.

Similarly unavailing are Plaintiff's claims about the manner in which Larson attempted to secure the prior medical records.   Plaintiff was in custody at Cook County Jail for approximately one year.    It was not unreasonable for Larson to contact Cook County Jail, as opposed to the federal prison where Plaintiff was incarcerated eight years prior, to secure recent medical records.   Plaintiff concedes that he used a CPAP machine while at Cook County Jail, and Larson's attempt to seek records there related to his sleep apnea was reasonable.

Plaintiff makes much of the fact that the records request was allegedly mailed (not faxed), despite the fact that the form itself bears a "faxed" stamp with a date of September 16, 2010, two days after Plaintiff signed it.  (Doc. 66-4, p.13).  Even if the form was mailed rather than faxed, the record contains no evidence that anyone made a decision to mail the form deliberately to slow down Plaintiff's care.

Plaintiff simply disagrees with how the medical Defendants conducted their inquiry into his past medical history/treatment.  The record is devoid of evidence from which a fact-finder could conclude that the medical Defendants' handling of Plaintiff's records inquiry reaches the sufficiently culpable state of mind required to support a deliberate indifference claim.

Plaintiff's main argument is that the health care unit did not immediately overrule security personnel's concern about having a CPAP machine sent from home.  However, during the relevant time period, the medical Defendants were trying (and taking reasonable steps) to determine whether a CPAP machine was even medically necessary for Plaintiff.  Although Plaintiff claims he suffered symptoms of his sleep apnea during the interim, he never submitted sick call slips on those symptoms.  Nor is there evidence that he suffered an acute event as a result of his sleep apnea.

Construed in the light most favorable to Plaintiff, the record before this Court does not permit the undersigned to conclude that Drs. Larson and Shepherd (in trying to confirm Plaintiff's sleep apnea before ordering or permitting the CPAP machine) fell so far afield of professional medical standards as to constitute deliberate indifference.  *See, e.g., McGee*, **721 F.3d at 482-83 (7th Cir. 2013) (finding no deliberate indifference when staff enforced a security procedure).**

To show that a defendant acted with a "sufficiently culpable state of mind," so as to survive summary judgment in a deliberate indifference case, a plaintiff must put forth evidence to establish not only that the defendant knew of a serious risk to the inmate's health but also that the defendant consciously disregarded that risk. This

"requires more than negligence and it approaches intentional wrongdoing."  *Holloway v. Delaware County Sheriff,* 700 F.3d 1063, 1073 (7th Cir. 2012).  Simply put, Plaintiff has not satisfied this subjective element of the deliberate indifference test as to Defendants Larson and Shepherd.  These medical Defendants are entitled to summary judgment.

■■   THE CORRECTIONAL DEFENDANTS -- DAVIS AND BROWN

Generally, non-medical professionals are entitled to rely on the determinations of medical professionals.  *Arnett v. Webster,* **658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on the expertise of medical personnel.")**.  There is one exception which permits liability if the non-medical defendants have reason to believe that the medical staff is ignoring a prisoner's serious medical needs.  *King v. Kramer,* **680 F.3d 1013, 1018 (7th Cir. 2012)**.

Here, Plaintiff claims that Davis, as Warden of PCC, was deliberately indifferent to his serious medical needs.  The evidence shows that Davis spoke to Plaintiff in person once while making his rounds, either in September or October 2010, and that Davis responded to two emergency grievances submitted by Plaintiff. Davis determined that Plaintiff's grievances about his sleep apnea were emergencies and expedited them accordingly.  Davis confirmed that the health care department was investigating Plaintiff's sleep apnea and determined that the health care unit was appropriately addressing Plaintiff's concerns. Davis was entitled to rely on the medical staff's judgment.

Plaintiff also argues that Davis did not investigate the two instances when his roommate pushed the emergency call button in his cell and the guards did not respond.

But Plaintiff has presented (and the record contains) no evidence that Davis *knew* about those incidents.

Finally as to Davis, Plaintiff stresses that Davis initially said the CPAP machine could not just be sent from Plaintiff's home (citing security concerns) and then later changed course and *allowed* the machine to be sent from Plaintiff's home and given to Plaintiff.  Assuming this characterization of the record to be accurate, Davis' actions do not constitute deliberate indifference.  It is undisputed that when any medical equipment is sent to PCC from an outside source, it must be approved by security before it is issued to the inmate.  So it is true that Plaintiff's family could not just directly send Plaintiff the CPAP (bypassing security protocols).  Additionally, Davis was entitled to defer to the medical Defendants' decision about whether Plaintiff actually needed a CPAP machine, and the medical Defendants were working to confirm precisely that (Plaintiff's need for the machine) in requesting the prior medical records and ordering the new sleep study.

Davis at no time ignored advice from a medical professional that Plaintiff would suffer from an acute medical event without his CPAP.  The fact that Davis changed his mind at some time during the relevant events and allowed the family to send the CPAP does not show deliberate indifference.  Plaintiff's total delay in obtaining the CPAP was less than three months, and there is no evidence that any of the Defendants deliberately dragged their feet, purposely slowed the process of approving the machine, or knowingly ignored Plaintiff's needs in that time period.

This leaves Plaintiff's claims against Defendant Brown. Christine Brown is the Health Care Unit Administrator at PCC, a position she has held since 2010.  She is not a physician.  She is not trained or licensed to diagnose patients, prescribe medicine, or recommend treatments.   Plaintiff alleges that Brown told him he could not send his CPAP machine from home to PCC, and that Brown refused to give him distilled water for his CPAP machine once he obtained it.  The record clearly demonstrates that although Brown oversees the health care unit at PCC, she has no authority to make medical determinations for inmates or to make security decisions for the facility.

As already noted above, the record here contains evidence of legitimate security concerns regarding inmates having medical devices like CPAP machines. Indeed, in his deposition, Plaintiff conceded that this was a security issue.  Brown had no authority to allow Plaintiff's family to directly give Plaintiff the CPAP and no authority to bypass the normal process for clearing/authorizing an outside medical device to be given to an inmate.  The medical unit had the ability to work to get Plaintiff a CPAP machine, which they undertook immediately after Larson's visit.  Brown was entitled to rely on them to do so.

Plaintiff also claims that Brown told him he could not have distilled water for his CPAP machine (i.e., that obtaining distilled water "was not going to happen").  In her sworn affidavit, Brown denies ever saying this, but the Court need not resolve that conflict – it is not a genuine issue of material fact.  Assuming (for the purposes of this motion) that Brown told Plaintiff he could not have distilled water, this does not constitute deliberate indifference.

Deliberate indifference requires a showing of "serious harm." *See, e.g., McGee v. Adams*, 721 F.3d at 484 (7th Cir. 2013); *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012). As the Seventh Circuit reiterated earlier this month, deliberate indifference requires that an official was aware of facts from which an inference could be drawn that a "substantial risk of serious harm exists" (and the official must draw that inference). *Pittman ex rel. Hamilton v. Madison County, Illinois*, -- F.3d --, 2014 WL 904672, *7 (7th Cir. March 10, 2014). Plaintiff conceded at his deposition that he suffered "no harm" from the lack of distilled water, and that he thought Brown's refusal to get it for him showed her poor attitude. A bad attitude is not deliberate indifference. Plaintiff has not shown (and cannot show) that a lack of distilled water posed a substantial risk of serious harm to him, a risk that Brown disregarded. Therefore Brown is entitled to summary judgment.

### E.   Conclusion

Prisoners do not have a right to unqualified access to healthcare but rather only to adequate medical care. And there is not one proper way to practice medicine in prison, but instead there is "a range of acceptable courses based on prevailing standards in the field." *Holloway*, 700 F.3d at 1073, *quoting Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Thus, a medical professional may be held liable under the deliberate indifference standard only if he makes a decision that so substantially departs from accepted professional judgment, practice or standards as to reveal the exercise of no such judgment at all. *Holloway*, 700 F.3d at 1073, *citing Sain*, 512 F.3d at 895. Viewing the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has

not shown that Defendants Larson and Shepherd were deliberately indifferent to Plaintiff's serious medical needs.

A prison official cannot be held liable under the Eighth Amendment for deliberate indifference unless he both "knows of and disregards an excessive risk to inmate health or safety." *Estate of Miller, ex rel. Bertram v. Tobiasz,* **680 F.3d 984, 989 (7th Cir. 2012).** Objectively, the claimed deprivation must be sufficiently serious, and subjectively, the prison official's state of mind must be sufficiently culpable. *Id.* **at 982.** Viewing the facts and reasonable inferences in the light most favorable to Plaintiff, the Court concludes that the record does not permit a reasonable jury to find Davis or Brown acted with deliberate indifference to Plaintiff's serious medical needs.

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment filed by Defendants Larson and Shepherd (Doc. 65) and **GRANTS** the motion for summary judgment filed by Defendants Brown and Davis (Doc. 78). The Court **DENIES as moot** Defendants' March 21, 2014 motion to continue trial (Doc. 96). No claims remain herein, and the Clerk of the Court **SHALL ENTER JUDGMENT** in favor of Defendants, Randy Davis, Christine Brown, Dennis Larson and John Shepherd, and against Plaintiff, Robert E. Dortch. The Clerk shall then close the case.

IT IS SO ORDERED.

DATED March 21, 2014.

s/ *Michael J. Reagan*
Michael J. Reagan
United States District Judge